IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DR. FRANCISCO M. DUBOCQ,<br><br>*Plaintiffs*<br><br>v.<br><br>EDWIN MEJÍAS LOPERENA, individually and in his official capacity as Chairman of the PUERTO RICO MEDICAL LICENSING AND DISCIPLINE BOARD; JUAN A. GONZÁLEZ SÁNCHEZ, ALEJANDRO ROMÁN HERNÁNDEZ,VICTORIANO QUINTANA MUÑIZ, AGUSTÍN VIDAL RIOS, JOSÉ E. IBÁÑEZ MORALES, all in their individual capacity and in their official capacity as members of the PUERTO RICO MEDICAL LICENSING AND DISCIPLINE BOARD,<br><br>*Defendants* | CIVIL NO. 11-<br><br>CIVIL RIGHTS; COMPENSATORY AND PUNITIVE DAMAGES; EQUITABLE, INJUNCTIVE RELIEF; DECLARATORY JUDGMENT<br><br>TRIAL BY JURY DEMANDED |

**COMPLAINT**

**TO THE HONORABLE COURT:**

    **COMES NOW** plaintiff Dr. Francisco M. Dubocq, M.D., through the undersigned counsel, and respectfully submits this Complaint as follows:

**I. JURISDICTION AND VENUE**

    1.1 This Court has jurisdiction over the present case, pursuant to the statutory provisions codified in 42 U.S.C. § 1983 and 28 U.S.C. § 1331, since the present action invokes the due process and equal protection provisions of the United States Constitution

and avers violations of civil rights by state actors under color of state law. This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1334(3); 2201-2202. Plaintiff demands trial by jury as to all issues and claims so triable.

## II. THE PARTIES

2.1 Plaintiff Dr. Francisco M. Dubocq, M.D., is a citizen of the United States and of Puerto Rico, resident of Puerto Rico, licensed since December of 1989 to practice the profession of medicine in Puerto Rico. He currently also holds medical licenses, all in good standing, issued by the states of New York, New Jersey and Michigan. His medical specialty is urology.

2.2 Co-defendant Edwin Mejías Loperena is a physician and Chairman of the "Junta de Licenciamiento y Disciplina Médica", the Puerto Rico Medical Licensing and Discipline Board. He is sued both in his personal and in his official capacities.

2.3 Co-defendant Juan González Sánchez is a physician and a Member of the "Junta de Licenciamiento y Disciplina Médica", Puerto Rico Medical Licensing and Discipline Board. He is sued both in his personal and in his official capacities.

2.4 Co-defendant Alejandro Román Hernández is a physician and a Member of the "Junta de Licenciamiento y Disciplina Médica", Puerto Rico Medical Licensing and Discipline Board. He is sued both in his personal and in his official capacities.

2.5 Co-defendant Victoriano Quintana Muñiz is a physician and a Member of the "Junta de Licenciamiento y Disciplina Médica", Puerto Rico Medical Licensing and Discipline Board. He is sued both in his personal and in his official capacities.

2.6 Co-defendant Agustín Vidal Ríos is a physician and a Member of the "Junta de Licenciamiento y Disciplina Médica", Puerto Rico Medical Licensing and Discipline Board. He is sued both in his personal and in his official capacities.

2.7 Co-defendant José E. Ibañez Morales is a physician and a Member of the "Junta de Licenciamiento y Disciplina Médica", Puerto Rico Medical Licensing and Discipline Board. He is sued both in his personal and in his official capacities.

III. THE FACTS

3.1 Plaintiff Francisco M. Dubocq ("Dubocq") is a physician, licensed to practice medicine in Puerto Rico since December 14, 1989, license number 9736. He had residency training in general surgery, from July 7, 1992 to June, 1994 (two years at Ponce Regional Hospital); and from July, 1997 to June, 1998 (one year at UPR's Medical Science Campus, which included a renal transplantation rotation), for a total of three (3) years of general surgery training and education. The American Board of Urology approved his pre-urology training, which allowed me to directly enter the urology residency, without having to undergo further surgery training.

3.2 Dubocq currently also holds medical licenses, all in good standing, issued by the states of New York, New Jersey and Michigan. His medical specialty is urology. He is a member in good standing of the American Medical Association, the American Urological Association and the New York Section of the American Urological Association.

3.3 Dubocq was a resident in Urology for four (4) years at Lincoln Medical and Mental Health Center in Bronx, New York, a major hospital and teaching institution

affiliated with the residency training program of New York Medical College. That urology residency program is accredited by the Accreditation Council for Graduate Medical Education (ACGME) and was so accredited at the time he attended and completed the residency. He was resident in Urology at Lincoln from September of 2003 to August of 2006 (three years) and Chief resident for one year, from September, 2006 to August , 2007, for a total of four (4) years of residency training in Urology. (*See* Statement, ¶ 3). From September to December, 2007, he worked as a urology medical staff (attending physician), at St. Barnabas Hospital, Bronx, New York and at Westchester Medical Center, in Valhalla, New York.

3.4 Upon submission of his credentials and residency certificates, on December 12, 2007, the Puerto Rico Medical Board (then the "Tribunal Examinador de Médicos" or Medical Examining Board), issued Dubocq a Specialty Certificate in Urology. Since January of 2008, he has been practicing the medical profession in Puerto Rico exclusively as a Urologist, specifically at "Instituto de Urología Avanzada" in Bayamón, Puerto Rico; at Hermanos Meléndez Hospital in Bayamón, Puerto Rico; at Professional Hospital in Guaynabo, Puerto Rico; and at Caribe Medical Plaza Ambulatory Surgery Center, in Vega Alta, Puerto Rico. He has no general medicine patients, only urology patients.

3.5 On January 3, 2011, upon returning from a Christmas vacation, doctor Dubocq received a Resolution issued by the Puerto Rico Medical Licensing and Discipline Board ("the Board"), which is dated December 23, 2010 and was sent by certified mail and signed by the President of the Board, co-defendant Dr. Edwin Mejias Loperena. Through

that "Resolution", the defendants, acting under color of state law: a) summarily suspended the Specialty Certificate issued to him on December 12, 2007; b) ordered him to cease and desist from practicing the medical specialty of urology, under penalty of contempt; and c) scheduled a hearing to be held on January 11, 2011.

3.6 The aforementioned Resolution states that the members of the Board received a complaint against Dubocq, supposedly filed by the Puerto Rico Urological Association. The Resolution included no complaint whatsoever and the Board has never provided Dubocq with a copy of that complaint or any complaint filed against him.

3.7 On January 4, 2011, Dubocq filed *pro se* a motion requesting the Board a continuance of the hearing scheduled for January 11, in order to give him time to hire legal representation and adequately prepare. On January 11, 2011, he appeared, joined by counsel, at the Medical Board and submitted a motion requesting again the continuance of the hearing, since doctor Dubocq had not areceived copy of any charge or complaint filed against him; requesting the Board to provide me with copy of the complaint or complaints that prompted them to begin the administrative proceedings against him; and requesting the Board to allow him to practice his specialty until they reached a decision on the matter. Defendants have not ruled on that motion.

3.8 On January 11, 2011, counsel for the Puerto Rico Medical Board informed Dubocq that the members of the Board would not meet until January 26, 2011. Thus, Dubocq requested the Board through counsel to entertain and decide his request for allowing him to continue practicing his specialty on or before the closing of the business

day of Thursday, January 13, 2011. On January 13, 2011, at approximately 3:45 pm, Duboq's lawyers sent to counsel of the Board an e mail, reiterating the need to have an answer by the Board before the closing of the business day of such date.

3.9 In a letter dated September 2, 2008, an Attorney Lilia Ortiz-Puig, then counsel of the Puerto Rico Medical Examining Board, informed Dubocq that the Board had been in the process of evaluating his file, particularly regarding his urology specialty. She further stated that Dubocq's file failed to show that he had complied with the residency requirement in order to be certified as urologist; and gave him ten (10) working days to submit the documents establishing the completion of the urology residency.

3.10 On September 16, 2008, Dubocq submitted to the Board all the documentation pertaining to his urology residency, as well as other documents, included in his "Career Binder" and in his "Educational Binder."

3.11 On September 22, 2008, Dubocq sent a letter to Attorney Lilia Ortiz-Puig, in response to her letter of September 2, 2008. In that letter, Dubocq advised her that he was not clear why or what was she evaluating, since on December 12, 2007, the Board had issued him the original Urology Specialty Certificate. Dubocq also informed her that he requested from the Board the Urology Specialty Certificate by following the application rules and that the Department of Graduate Medical Education (GME) had sent to the Board the Completion of Training Certificate; that, to the best of his knowledge, the Board had received a letter certifying his urology training at Lincoln Medical and Mental Health Center from September 1, 2003 to August 31, 2007.

3.12 In that letter of September 22, 2008, Dubocq also specified the contents of the "Career Binder" and the "Educational Binder" that he personally had previously provided to the Board, on September 16, 2008.

3.13 After Dubocq sent the letter dated September 22, 2008 and provided all the pertinent documents, he did not hear from the Board (except for the good standing certificates issued to him by the Board), until the Resolution of December 23, 2010, which he received on January 3, 2011.

3.14 Defendants' unlawful actions have caused irreparable harm to doctor Dubocq and to his patients. A significant number of patients have been afflicted by Dubocq's sudden inability to offer medical services as a urologist. All rescheduling and cancellations have caused a severe financial burden for his office, "Instituto de Urología Avanzada" in Bayamón, Puerto Rico, which is a busy healthcare corporation. This specialty practice is presenting overhead losses, now with loss of health insurance and/or patient's revenues. Beyond the financial losses is the break down in continuity of dedicated urological care.

3.15 Dubocq has patients with prostate and bladder cancer, renal masses, gross urinary bleeding (hematuria), urinary retention, renal colic, pelvic pain and other maladies, who are anxiously seeking medical help and treatment. Many of these patients are elderly and disable and deserve and need from him continuing health care. In addition, Dubocq is the only urologist in Bayamon, and one of the very few in the Island,

caring for low income patients covered by the Puerto Rico public health insurance, known as the "reforma" or "mi salud" patients.

3.16 Since Dubocq received the order of cease and desist issued by the Board, he has been unable to see at least ten (10) in-hospital and emergency patient consults at Hermanos Melendez Hospital. Since January 10, until January 12, 2011, approximately eighteen (18) office procedures and thirty (30) office encounters had to be rescheduled. Office personnel keep holding scheduled surgeries but disgruntled patients are demanding explanations from Dubocq.

3.17 As a consequence of Defendants' actions, Plaintiff Dubocq has suffered and will continue to suffer damages in the form of emotional distress, pain and suffering, and loss of income.  Defendants are liable for those damages.

## IV. THE CLAIMS FOR RELIEF

4.1 Plaintiff Dubocq has a liberty and property right in pursuing and practicing a gainful employment and profession. Dubocq has a property and liberty interest in practicing urology.

4.2 It is the right of Co-plaintiff Dr. Francisco M. Dubocq and of every citizen to follow any lawful calling, business, or profession he may choose, subject only to such reasonable and non-arbitrary restrictions as are imposed upon all persons of like age, sex, and condition.

4.3 State actors cannot exclude a person from the practice of a profession or occupation in a manner or for reasons that contravene the Due Process of the Fifth and the Fourteenth Amendments.

4.4 The interest acquired in the practice of a profession or occupation -that is, the right to continue their prosecution- is often of great value to the possessors, and cannot be arbitrarily taken from them, any more that their real or personal property can thus be taken.

4.5 The right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the Fourteenth Amendment to secure.

4.6 Government actors may not take away without clear and focused justification a fair opportunity for an individual to realize his or her identity in a chosen vocation.

4.7 Defendants' actions violated and continue to violate and abridge plaintiffs' liberty and property rights. Such abridgement took place and continue to take place without due process of law, both in its procedural and substantive aspects.

4.8 Defendants' actions of barring plaintiff Dr. Francisco M. Dubocq from his specialty of urology is arbitrary, capricious and shocks the conscience, particularly because Defendants' decision was reached with no notice of charges or complaint(s), no pre-deprivation hearing and no hint or reason whatsoever that supported a claim that emergency measures were warranted to protect the public interest or health and welfare of doctor Dubocq's patients. On the contrary, defendants' actions disregarded the and

was contrary to the public interest and to the health and welfare of doctor Dubocq's patients.

4.9 Defendants' actions of summarily suspending the medical specialty certificate of co-plaintiff doctor Dubocq violated his procedural and substantive due process rights under the United States Constitution. Those actions by defendants were and continue to be arbitrary, capricious, callous and shocking to the conscience.

## V. PRAYER FOR RELIEF

Plaintiff prays this Honorable Court to grant him the following remedies:

1) A declaratory judgment holding that defendants' actions, including the summary suspension of Dubocq's specialty certificate and the concomitant cease and desist order enjoining him from practicing his medical specialty of urology were unconstitutional as they impermissibly and unlawfully abridged plaintiffs' rights under the Constitution and laws of the United States, including his due process rights under the Fifth and Fourteenth Amendment of the Constitution.

2) Injunctive relief enjoining defendants from continue to abridge plaintiffs' federal constitutional rights and instructing defendants to allow plaintiff Francisco M. Dubocq to resume his urology practice in Puerto Rico;

3) Injunctive relief enjoining defendants from continue to abridge plaintiffs' federal constitutional and statutory rights and instructing defendants to lift the suspension of the medical specialty certificate issued to plaintiff doctor Dubocq;

4) Order defendants to pay plaintiffs: a) compensatory damages in an amount of no less than 2 million dollars; b) damages due to loss of income in an amount of no less than $200,000.00 (two hundred thousand dollars); and c) punitive damages in an amount of no less than 2 million dollars, for the wanton and intentional violation of plaintiffs' federal constitutional rights;

5) Order defendants to pay plaintiff his attorney's fees, expert witness fees, and costs of this litigation, pursuant to 42 U.S.C. § 1988; and

6) Any other relief that the Court deems proper and convenient, both under law and equity.

Plaintiffs demand trial by jury as to all issues and claims so triable.

**WHEREFORE**, plaintiffs pray this Honorable Court to grant the relief specified in this Complaint.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, on January 14, 2011.

**WE HEREBY CERTIFY** that on this same date we electronically filed the foregoing Memorandum of Law with the Clerk of the Court, using the CM/ECF System. WE FURTHER CERTIFY that on this date we notified the foregoing **by electronic means** to **Luis Hernánez Cardona, Esq.**, counsel for the Puerto Rico Medical Licensing and Disciplinary Board, hernandezcardonalaw@gmail.com; **Miguel Verdiales Morales, Esq.**, Director of the Legal Division of the Puerto Rico Department of Health, mverdiales@salud.gov.pr; Aida L. Muñiz, Legal Clerk, Puerto Rico Medical Licensing and Disciplinary Board,

almuniz@hotmail.com; and **by messenger** to the **Puerto Rico Medical Licensing and Disciplinary Board**, GM Group Plaza 1590, Third Floor, Road 1 from Río Piedras to Caguas, Ponce de León Street (Marginal), San Juan, Puerto Rico; and to the **Puerto Rico Department of Justice**, Office of the Secretary, Olimpo Street, Corner of Axtmayer Street, Stop 11, Miramar, San Juan, Puerto Rico.

S/José Luis González Castañer
**JOSE LUIS GONZÁLEZ CASTAÑER**
**USDC-PR 201905**
Westernbank World Plaza Suite 1500
268 Muñoz Rivera Ave.
Hato Rey, P.R. 00918
Tel.  (787) 758-7819
Fax   (787) 758-4152
jlgclaw@gmail.com

*S/Roberto Ariel Fernández*
**ROBERTO ARIEL FERNÁNDEZ**
**USDC-PR 206301**
Westernbank World Plaza Suite 1500
268 Muñoz Rivera Ave.
Hato Rey, P.R. 00918
Tel.  (787) 421-1061
Fax   (787) 758-4152
rafernandez@justice.com

S/Cristina B. Martínez Guzmán
**CRISTINA B. MARTÍNEZ GUZMÁN**
**USDC-PR 218710**
martinezguzmanc@gmail.com