IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DR. FRANCISCO M. DUBOCQ,<br><br>*Plaintiffs*<br>v.<br><br>EDWIN MEJÍAS LOPERENA, individually and in his official capacity as Chairman of the PUERTO RICO MEDICAL LICENSING AND DISCIPLINE BOARD, et al.,<br><br>*Defendants* | CIVIL NO. 11-1037<br><br>CIVIL RIGHTS; COMPENSATORY AND PUNITIVE DAMAGES AND EQUITABLE, INJUNCTIVE RELIEF; DECLARATORY JUDGMENT<br><br>TRIAL BY JURY DEMANDED |

**MOTION REQUESTING TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**TO THE HONORABLE COURT**:

**COMES NOW** plaintiff Dr. Francisco M. Dubocq, M.D., through the undersigned counsel, and respectfully submits this Motion as follows:

## I. INTRODUCTION

1.1 Plaintiff submitted the complaint in the instant case today, January 14, 2011. In essence, the complaint avers that defendants unlawfully abridged the procedural due process rights of plaintiff Dr. Francisco M. Dubocq, MD (hereinafter "doctor Dubocq" or "Dubocq") by enjoining him from practicing his medical specialty of urology with no prior hearing and without providing him with the complaint filed against him with the Puerto Rico Medical Licensing and Discipline Board ("the Board"). Furthermore, defendants failed to address and grant the urgent request that doctor

Dubocq submitted them, praying them to allow him to practice urology until they reached a decision. Indeed, even though doctor Dubocq expressly requested copy of the charge against him at the time that he moved defendants to set aside the unconstitutional order, Dr. Dubocq has not received yet copy of the charge or complaint against him.

1.2 Plaintiff is requesting this Court to issue the extraordinary remedy of a Temporary Restraining Order ("TRO"). Such course of action is warranted by the circumstances of this case, where Defendants interrupted the medical practice of Plaintiff without a previous hearing and have failed to entertained and decide, much less grant, a request for the stay of the summary suspension of Plaintiff's specialty certificate and of the order to cease and desist from attending to his urology patients. Plaintiff has given ample opportunity to Defendants to decide his request for a stay, after providing the Defendants with documentary evidence that *prima facie* shows that his urology credentials are in order and that Defendants predecessors did not err in granting him an urology specialty certificate.

1.3 Plaintiff has been suspended from the practice of his profession for twelve calendar days now, which in itself is an irreparable injury. Moreover, his patients have not received treatment from Dr. Dubocq, causing them considerable harm. Many of his patients are low income citizens, and Dr. Dubocq is one of the few urologists who provide healthcare to these so-called "Reforma" or "Mi Salud" patients, and the only "Reforma" urologist in the Bayamón area.

1.4 Counsel for the Board had requested Plaintiff until the morning of January 13, 2011 to announce a decision from the Board on his motion for stay of the summary suspension and of the cease and desist order. That term arrived and went, and the Board took no action. Further conversations between Plaintiff's counsel and counsel for the Board, including email and telephone communications on January 13 and 14, 2011 also proved fruitless. Therefore, Plaintiff respectfully submits that the immediate intervention of this Honorable Court, through the wise use of its equitable relief powers is more than warranted.

1.5 Plaintiff submits that the factors for the issuance of a TRO and of preliminary injunctive relief favor him. A decision by the Defendants on the matter of Plaintiff's urology credentials could take months and even more than a year. In the meantime, doctor Dubocq is barred from practicing medicine, which represents an idle time that is and will continue to be devastating to his patients, to his practice, to him, and to his finances.

1.6 Certainly, Dubocq and his patients are already suffering irreparable harm and will further suffer irreparable harm if the injunction is denied. Moreover, defendants' actions and their unwillingness to grant a stay of their cease and desist order left doctor Dubocq with no adequate remedy at law, except immediate injunctive relief.

1.7 Defendants, on the other hand, will suffer no harm whatsoever if this Honorable Court grants injunctive relief. There is no harm to defendants if doctor Dubocq, as usual, works for a living and provides medical care to his patients.

1.8 Plaintiff has a more than reasonable likelihood of success on the merits. Deprivations of property and liberty interests with no prior hearing are the rare exception, never the norm. Defendants have not even tried to justify their implicit claim that they had to act harshly and immediately. Their Resolution clearly shows that they had no factual basis for taking the Draconian measure of indefinitely enjoining doctor Dubocq from practicing his profession and see his urology patients. Plainitff further submits that defendants could not show that they had no alternative but to do away with the minimal procedural safeguards.

1.9 Finally, given all the patients who depend on doctor Dubocq, a physician with an extensive education and excellent training in his specialty, the injunction will protect the public interest, while its denial will certainly harm the public interest.

## II. THE FACTS

2.1 The following facts are contained in the Unsworn Statement Under Penalty of Perjury (hereinafter "Statement"), signed by plaintiff and are also supported by numerous exhibits. Both the Statement and the exhibits are being attached to the present motion. Those facts are also averred in the complaint filed today.

2.2 Plaintiff Francisco M. Dubocq is a physician, licensed to practice medicine in Puerto Rico since December 14, 1989, license number 9736. He had residency training in general surgery, from July 7, 1992 to June, 1994 (two years at Ponce Regional Hospital); and from July, 1997 to June, 1998 (one year at UPR's Medical Science Campus, which included a renal transplantation rotation), for a total of three (3) years of general

surgery training and education. The American Board of Urology approved his pre-urology training, which allowed me to directly enter the urology residency, without having to undergo further surgery training. (*See* Statement, ¶ 1).

2.3 Dubocq currently also holds medical licenses, all in good standing, issued by the states of New York, New Jersey and Michigan. His medical specialty is urology. He is a member in good standing of the American Medical Association, the American Urological Association and the New York Section of the American Urological Association. (*See* Statement, ¶ 2).

2.4 He was a resident in Urology for four (4) years at Lincoln Medical and Mental Health Center in Bronx, New York, a major hospital and teaching institution affiliated with the residency training program of New York Medical College. That urology residency program is accredited by the Accreditation Council for Graduate Medical Education (ACGME) and was so accredited at the time he attended and completed the residency. He was resident in Urology at Lincoln from September of 2003 to August of 2006 (three years) and Chief resident for one year, from September, 2006 to August , 2007, for a total of four (4) years of residency training in Urology. (*See* Statement, ¶ 3). From September to December, 2007, he worked as a urology medical staff (attending physician), at St. Barnabas Hospital, Bronx, New York and at Westchester Medical Center, in Valhalla, New York. (*See* Statement, ¶ 4).

2.5 Upon submission of his credentials and residency certificates, on December 12, 2007, the Puerto Rico Medical Board (then the "Tribunal Examinador de Médicos" or

Medical Examining Board), issued Dubocq a Specialty Certificate in Urology. Since January of 2008, he has been practicing the medical profession in Puerto Rico exclusively as a Urologist, specifically at "Instituto de Urología Avanzada" in Bayamón, Puerto Rico; at Hermanos Meléndez Hospital in Bayamón, Puerto Rico; at Professional Hospital in Guaynabo, Puerto Rico; and at Caribe Medical Plaza Ambulatory Surgery Center, in Vega Alta, Puerto Rico. He has no general medicine patients, only urology patients. (*See* Statement, ¶ 5).

2.6 On January 3, 2011, upon returning from a Christmas vacation, doctor Dubocq received a Resolution issued by the Puerto Rico Medical Licensing and Discipline Board ("the Board"), which is dated December 23, 2010 and was sent by certified mail and signed by the President of the Board, co-defendant Dr. Edwin Mejias Loperena. Through that "Resolution", the Board a) summarily suspended the Specialty Certificate issued to him on December 12, 2007; b) ordered him to cease and desist from practicing the medical specialty of urology, under penalty of contempt; and c) scheduled a hearing to be held on January 11, 2011. (*See* Statement, ¶¶ 6 & 7).

2.7 The aforementioned Resolution states that the members of the Board received a complaint against Dubocq, supposedly filed by the Puerto Rico Urological Association. The Resolution included no complaint whatsoever and the Board has never provided Dubocq with a copy of that complaint or any complaint filed against him. (*See* Statement ¶ 8).

2.8 On January 4, 2011, Dubocq filed *pro se* a motion requesting the Board a continuance of the hearing scheduled for January 11, in order to give him time to hire legal representation and adequately prepare. On January 11, 2011, he appeared, joined by counsel, at the Medical Board and submitted a motion requesting again the continuance of the hearing, requesting the Board to provide me with copy of the complaint or complaints that prompted them to begin the administrative proceedings against him; and requesting the Board to allow him to practice his specialty until they reached a decision on the matter. (*See* Statement ¶ 9). At the time that Dr. Dubocq filed the motion to set aside the unconstitutional order counsel for Dr. Dubocq met with counsel for the Board and urged him to impress upon the Board the urgency of obtaining a ruling on said motion because of the continued and irrreparable harm that such order is causing on Dr. Dubocq.

2.9 On January 11, 2011, counsel for the Puerto Rico Medical Board informed Dubocq that the members of the Board would not meet until January 26, 2011. Thus, Dubocq requested the Board through counsel to entertain and decide his request for allowing him to continue practicing his specialty on or before the closing of the business day of Thursday, January 13, 2011. On January 13, 2011, at approximately 3:45 pm, Duboq's lawyers sent to counsel of the Board an e mail, reiterating the need to have an answer by the Board before the closing of the business day of such date (*See* Statement ¶ 10).

2.10 In a letter dated September 2, 2008, an Attorney Lilia Ortiz-Puig, then counsel of the Puerto Rico Medical Examining Board informed Dubocq that the Board had been in the process of evaluating his file, particularly regarding his urology specialty. She further stated that Dubocq's file failed to show that he had complied with the residency requirement in order to be certified as urologist; and gave him ten (10) working days to submit the documents establishing the completion of the urology residency. (*See* Statement ¶ 11).

2.11 On September 16, 2008, Dubocq submitted to the Board all the documentation pertaining to his urology residency, as well as other documents, included in his "Career Binder" and in his "Educational Binder." (*See* Statement ¶ 12).

2.12 On September 22, 2008, Dubocq sent a letter to Attorney Lilia Ortiz-Puig, in response to her letter of September 2, 2008. In that letter, Dubocq advised her that he was not clear why or what was she evaluating, since on December 12, 2007, he had received from the Board the original Urology Specialty Certificate. He also informed her that he requested from the Board the Urology Specialty Certificate by following the application rules and that the Department of Graduate Medical Education (GME) had sent to the Board the Completion of Training Certificate; that, to the best of his knowledge, the Board had received a letter certifying his urology training at Lincoln Medical and Mental Health Center from September 1, 2003 to August 31, 2007. (*See* Statement ¶ 13).

2.13 In that letter of September 22, 2008, Dubocq also specified the contents of the "Career Binder" and the "Educational Binder" that he personally had previously provided to the Board, on September 16, 2008. (*See* Statement ¶ 14).

2.14 After Dubocq sent the letter dated September 22, 2008 and provided all the pertinent documents, he did not hear from the Board (except for the good standing certificates issued to him by the Board), until the Resolution of December 23, 2010, which he received on January 3, 2011. (*See* Statement ¶ 15).

2.15 A number of patients have been afflicted by Dubocq's sudden inability to offer medical services as a urologist. All rescheduling and cancellations have caused a severe financial burden for his office, "Instituto de Urología Avanzada" in Bayamón, Puerto Rico, which is a busy healthcare corporation. This specialty practice is presenting overhead losses, now with loss of health insurance and/or patient's revenues. Beyond the financial losses is the break down in continuity of dedicated urological care. (*See* Statement ¶ 16).

2.16 Dubocq has patients with prostate and bladder cancer, renal masses, gross urinary bleeding (hematuria), urinary retention, renal colic, pelvic pain and other maladies, who are anxiously seeking medical help and treatment. Many of these patients are elderly and disable and deserve and need from him continuing health care. In addition, Dubocq is the only urologist in Bayamón, and one of the very few in the Island, caring for low income patients covered by the Puerto Rico public health insurance, known as the "Reforma" or "Mi Salud" patients. (*See* Statement ¶ 17).

2.17 Since Dubocq received the order of cease and desist issued by the Board, he has been unable to see at least ten (10) in-hospital and emergency patient consults at Hermanos Melendez Hospital. Since January 10, until January 12, 2011, approximately eighteen (18) office procedures and thirty (30) office encounters had to be rescheduled. Office personnel keep holding scheduled surgeries but disgruntled patients are demanding explanations from Dubocq. (*See* Statement ¶ 18).

**III. THE FACTORS TO GRANT A REQUEST FOR A TRO FAVOR PLAINTIFF**

3.1 The factors relevant to whether to grant a request for temporary restraining order ("TRO") or an injunction are the same. An injunction "is a court order that commands the nonmovant to do or abstain from doing a particular action. The purpose of an injunction is to preclude the occurrence of a threatened wrong or injury as well as to prevent future violations." Morton Denlow, *The Motion for a Preliminary Injunction: Time for a Uniform Federal Standard*, 22. Rev. Litig. 495, 498-499 (2003). The factors to consider in the face of a motion for a preliminary injunction are well known: 1) whether the plaintiff has an adequate remedy at law; 2) whether the plaintiff will suffer irreparable harm if the injunction is denied; 3) whether this harm will be greater than the harm the defendant will suffer if the injunction is granted; 4) whether the plaintiff has a reasonable likelihood of success on the merits; and 5) whether the injunction will protect or harm the public interest. Id. at 508-509.

3.2 Plaintiff submits that those factors favor the issuance of a TRO and of preliminary injunctive relief. A decision by the Board could take months and even more

than a year. The way the Medical Board works is that hearings are held before an examinig officer, who then writes a report with recommendations, which the Board then receive before deciding the matter and putting the decision in writing. In the meantime, doctor Dubocq is barred from practicing medicine, idle time that is and will continue to be devastating to him, to his practice, to his finances and to his patients.

3.3 For those reasons, Dubocq and his patients are already suffering irreparable harm and will further suffer irreparable harm if the injunction is denied. Moreover, defendants' actions and their unwillingness to grant a stay of their cease and desist order left doctor Dubocq with no adequate remedy at law, except immediate injunctive relief.

3.4 Defendants, on the other hand, will suffer no harm whatsoever if this Honorable Court grants injunctive relief. There is no harm to defendants if doctor Dubocq, as usual, works for a living and provides medical care to his patients. As the facts show, the Board, through one of her counsel, had expressed some concerns about the residency credentials of doctor Dubocq since September of 2008. However, it was not until December of 2010, more than two years after the Board requested and received information as to Dubocq's credentials, that defendants decided to act as if it was imperative to immediately enjoin plaintiff from practicing urology, disregarding the presumption of correction of the Board's issuance of the Specialty Certificate and disregarding the due process rights of doctor Dubocq.

3.5 Plaintiff has a more than reasonable likelihood of success on the merits. Deprivations of property and liberty interests with no prior hearing are the rare

exception, never the norm. Defendants have not even tried to justify their implicit claim that they had to act harshly and immediately. Their Resolution clearly shows that they had no factual basis for taking the Draconian measure of indefinitely enjoining doctor Dubocq from practicing his profession and see his urology patients. Plainitff further submits that defendants could not show that they had no alternative but to do away with the minimal procedural safeguards and: a) provide doctor Dubocq with timely notice of the complaint and of the charges; b) provide him a meaningful opportunity to be heard and to have the matter decided by the record after presenting all the evidence in his favor; c) in the meantime, refrain from disallowing him from practicing his profession while they entertained and decided the matter.

3.6 Finally, given all the patients who depend on doctor Dubocq, a physician with an extensive education and excellent training in his specialty, the injunction will protect the public interest, while its denial will certainly harm the public interest.

3.7 Defendants had no authority under Puerto Rico law and under the United States Constitution to dispense with a pre-deprivation hearing. Moreover, an adjudicator listens to both sides of a controversy, claim or complaint before reaching a decision, before adjudicating. Defendants never acted as adjudicators, precisely because they dispensed with the minimal procedural safeguards to which plaintiff González was entitled. In these circumstances, and following the principles expounded in DiBlasio v. Novello, 344 F.3d 292 (2nd Cir. 2003); Guillemard v. Contreras, 490 F.3d 31 (1st Cir. 2007); and Chalkboard, Inc. v. Brandt, 902 F.2d 1375 (9th Cir. 1989), plaintiffs request this Court

to issue an emergency TRO order, immediately enjoining defendants from continue enforcing their cease and desist order and their summary suspension of doctor Dubocq's Specialty Certificate.

**WHEREFORE**, plaintiff prays this Honorable Court to grant his request for the issuance of a temprary restraining order and of a preliminary injunction, and instruct defendants to immediately stay the summary suspension of doctor Dubocq's Urology Specialty Certificate and their concomitant cease and desist order under penalty of contempt and thus allow doctor Dubocq to unrestrictively resume his urology practice.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, on January 14, 2011.

**WE HEREBY CERTIFY** that on this same date we electronically filed the foregoing Memorandum of Law with the Clerk of the Court, using the CM/ECF System. WE FURTHER CERTIFY that on this date we notified the foregoing **by electronic means** to **Luis Hernánez Cardona, Esq.**, counsel for the Puerto Rico Medical Licensing and Disciplinary Board, hernandezcardonalaw@gmail.com; **Miguel Verdiales Morales, Esq.**, Director of the Legal Division of the Puerto Rico Department of Health, mverdiales@salud.gov.pr; Aida L. Muñiz, Legal Clerk, Puerto Rico Medical Licensing and Disciplinary Board, almuniz@hotmail.com; and **by messenger** to the **Puerto Rico Medical Licensing and Disciplinary Board**, GM Group Plaza 1590, Third Floor, Road 1 from Río Piedras to Caguas, Ponce de León Street (Marginal), San Juan, Puerto Rico; and to the **Puerto Rico**

**Department of Justice**, Office of the Secretary, Olimpo Street, Corner of Axtmayer Street, Stop 11, Miramar, San Juan, Puerto Rico.

S/José Luis González Castañer
**JOSE LUIS GONZÁLEZ CASTAÑER**
**USDC-PR 201905**
Westernbank World Plaza Suite 1500
268 Muñoz Rivera Ave.
Hato Rey, P.R. 00918
Tel. (787) 758-7819
Fax (787) 758-4152
jlgclaw@gmail.com

*S/Roberto Ariel Fernández*
**ROBERTO ARIEL FERNÁNDEZ**
**USDC-PR 206301**
Westernbank World Plaza Suite 1500
268 Muñoz Rivera Ave.
Hato Rey, P.R. 00918
Tel. (787) 421-1061
Fax (787) 758-4152
rafernandez@justice.com

S/Cristina B. Martínez Guzmán
**CRISTINA B. MARTÍNEZ GUZMÁN**
**USDC-PR 218710**
martinezguzmanc@gmail.com