## UNSWORN STATEMENT UNDER PENALTY OF PERJURY

I, Francisco M. Dubocq-Berdeguez, of legal age, married, resident of Guaynabo, Puerto Rico, do state under penalty of perjury as follows:

1. I am a physician, licensed to practice medicine in Puerto Rico since December 14, 1989, license number 9736. (See Exhibit 1, Certificate issued by the PR Medical Board on July 23, 2003). I underwent residency training in general surgery, from July 7, 1992 to June, 1994 (two years at Ponce Regional Hospital); and from July, 1997 to June, 1998 (one year at UPR's Medical Science Campus, which included a renal transplantation rotation), for a total of three (3) years of general surgery training and education. The American Board of Urology approved my pre-urology training, which allowed me to directly enter the urology residency, without having to undergo further surgery training. (See Exhibit 2, Letter of October 19, 1996, signed by Alan D. Perlmutter, MD, Executive Secretary of the American Board of Urology, confirming that I completed the general surgery requirements at an accredited residency program in order to enter to a urology residency program; two (2) certificates issued by the Ponce Regional Hospital; and letter of recommendation of May 12, 2000, signed by Eduardo A. Santiago-Delpin, MD, of the University of Puerto Rico).

2. I currently also hold medical licenses, all in good standing, issued by the states of New York, New Jersey and Michigan. My medical specialty is urology. (See Exhibit 3, License certificates from the states of New York, New Jersey and Michigan). I am a member in good standing of the American Medical Association, the American Urological

Association and the New York Section of the American Urological Association. (See Exhibit 4).

3. I was a resident in Urology for four (4) years at Lincoln Medical and Mental Health Center in Bronx, New York, a major hospital and teaching institution affiliated with the residency training program of New York Medical College. That urology residency program is accredited by the Accreditation Council for Graduate Medical Education (ACGME) and was so accredited at the time I attended and completed the residency. (See Exhibt 5, letter of March 1, 2010, sent by Gloria Rouse-LaRue, Accreditation Assistant at the ACGME). I was resident in Urology at Lincoln from September of 2003 to August of 2006 (three years) and Chief resident for one year, from September, 2006 to August , 2007, for a total of four (4) years of residency training in Urology. (See Exhibit 6, Certificates of my urology residency at Lincoln Medical and Mental Health Center).

4. From September to December, 2007, I worked as an urology medical staff (attending physician), at St. Barnabas Hospital, Bronx, New York and at Westchester Medical Center, in Valhalla, New York. (See Exhibit 7).

5. Upon submission of my credentials and residency certificates, on December 12, 2007, the Puerto Rico Medical Board (then the "Tribunal Examinador de Médicos" or Medical Examining Board), issued me a Specialty Certificate in Urology. (See Exhibit 8 Specialty Certificate issued on December 12, 2007 and signed by the then Chairman of the Puerto Rico Medical Board, Milton D. Carrero Quinones, MD). Since January of 2008, I have been practicing the medical profession in Puerto Rico exclusively as a Urologist,

specifically at "Instituto de Urología Avanzada" in Bayamón, Puerto Rico; at Hermanos Meléndez Hospital in Bayamón, Puerto Rico; at Professional Hospital in Guaynabo, Puerto Rico; and at Caribe Medical Plaza Ambulatory Surgery Center, in Vega Alta, Puerto Rico. I have no general medicine patients, only urology patients.

6. On January 3, 2011, upon returning from a Christmas vacation, I received a Resolution issued by the Puerto Rico Medical Licensing and Discipline Board ("the Board"), which is dated December 23, 2010 and was sent by certified mail and signed by the President of the Board, Dr. Edwin Mejías Loperena (See Exhibit 9, Resolution issued by the Board on December 23, 2010).

7. Through that "Resolution", the Board a) summarily suspended the Specialty Certificate issued to me on December 12, 2007; b) ordered me to cease and desist from practicing the medical specialty of urology; and c) scheduled a hearing to be held on January 11, 2011. (See Exhibit 9).

8. The aforementioned Resolution states that the members of the Board received a complaint against me, filed by the Puerto Rico Urological Association. The Resolution included no complaint whatsoever and the Board has never provided me with a copy of that complaint or any complaint filed against me. (See Exhibit 9).

9. On January 4, 2011, I filed *pro se* a motion requesting the Board a continuance of the hearing scheduled for January 11, in order to give me time to hire legal representation and adequately prepare. On January 11, 2011, I appeared, joined by counsel, at the Medical Board and submitted a motion requesting again the continuance

-3-

of the hearing, requesting the Board to provide me with copy of the complaint or complaints that prompted them to begin the administrative proceedings against me; and requesting the Board to allow me to practice my specialty until they reached a decision on the matter. (*See* <u>Exhibit</u> 10).

10. On January 11, 2011, counsel for the Puerto Rico Medical Board informed me that the members of the Board will not meet until January 26, 2011. Thus, I requested the Board through counsel to entertain and decide my request for allowing me to continue practicing my specialty on or before the closing of the business day of Thursday, January 13, 2011. On January 13, 2011, at 3:45 pm, my lawyers sent to counsel of the Board an e mail, reiterating the need to have an answer for the Board before the closing of the business day of such date (See <u>Exhibit</u> 11, e mail of January 13, 2011).

11. In a letter dated September 2, 2008, which I received on September 12, 2008, an Attorney Lilia Ortiz-Puig, then counsel of the Puerto Rico Medical Examining Board informed me that the Board had been in the process of evaluating my file, particularly regarding my urology specialty. She further stated that my file failed to show that I had complied with the residency requirement in order to be certified as urologist; and gave me ten working days to submit the documents establishing the completion of the urology residency. (See <u>Exhibit</u> 12, letter of September 2, 2008 signed by Attorney Lilia Ortiz-Puig).

12. On September 16, 2008, I submitted to the Board all the documentation pertaining to my residency, as well as other documents, included in my "Career Binder"

-4-

and in my "Educational Binder." (See Exhibit 13, Certification of September 16, 2008, signed by Mirta I. Gonzalez Acevedo, a Secretary with the Board).

13. On September 22, 2008, I sent a letter to Attorney Lilia Ortiz-Puig, in response to her letter of September 2, 2008. In that letter, I advised her that I was not clear why or what was she evaluating, since on December 12, 2007, I had received from the Board the original Urology Specialty Certificate. I also informed her that I requested from the Board the Urology Specialty Certificate by following the application rules and that the Department of Graduate Medical Education (GME) had sent to the Board the Completion of Training Certificate; that, to the best of my knowledge, the Board had received a letter certifying my urology training at Lincoln Medical and Mental Health Center from September 1, 2003 to August 31, 2007. (See Exhibit 14, letter of September 22, 2008, signed by myself, addressed to Attorney Lilia Ortiz-Puig; Exhibit 15, letter of September 17, 2007, sent to the "Board of Medical Examiners of Puerto Rico," signed by M. David Schwalb, MD and Muhammad S. Choudhury, MD).

14. In that letter of September 22, 2008, I also specified the contents of the "Career Binder" and the "Educational Binder" that I personally had previously provided to the Board, on September 16, 2008. (See Exhibit 14, letter of September 22, 2008, signed by myself, addressed to Attorney Lilia Ortiz-Puig).

15. After I sent the letter dated September 22, 2008 and provided all the pertinent documents, I did not hear from the Board (except for the good standing certificates issued to me by the Board, see Exhibit 16, good standing certificate of

October 22, 2009), until the Resolution of December 23, 2010, which I received on January 3, 2011.

16. A number of patients have been afflicted by my sudden inability to offer medical services as a urologist. All rescheduling and cancellations have caused a severe financial burden for my office, "Instituto de Urología Avanzada" in Bayamón, Puerto Rico, which is a busy healthcare corporation. This specialty practice is presenting overhead losses, now with loss of health insurance and/or patient's revenues. Beyond the financial losses is the break down in continuity of dedicated urological care.

17. I have patients with prostate and bladder cancer, renal masses, gross urinary bleeding (hematuria), urinary retention, renal colic, pelvic pain and other maladies, who are anxiously seeking medical help and treatment. Many of these patients are elderly and disabled and deserve and need from mine continuing health care. In addition, I am the only urologist in Bayamón, and one of the very few in the Island, caring for low income patients covered by the Puerto Rico public health insurance, known as the "Reforma" or "Mi Salud" patients.

18. Since I received the order of cease and desist issued by the Board, I have been unable to see at least ten (10) in-hospital and emergency patient consults at Hermanos Meléndez Hospital. Since January 10, until January 12, 2011, approximately eighteen (18) office procedures and thirty (30) office encounters had to be rescheduled. Office personnel keep holding scheduled surgeries but disgruntled patients are demanding explanations from me.

-6-

**I HEREBY** solemnly declare under penalty of perjury that the aforesaid statements included herein are true.

In San Juan, Puerto Rico, on January 14, 2011.

**FRANCISCO M. DUBOCQ**